The first case this morning is 22-1046 Intel Corporation v. Qualcomm Incorporated. Mr. Dowd, you've reserved four minutes for rebuttal. I have, Your Honor. You may proceed. Thank you, Your Honor. May it please the Court, Jim Dowd, on behalf of Intel. The Board committed two principal errors. First, the Board improperly read a selective boost requirement into Claim 10 and 19 of the 558 patent. And second, for Claims 15 through 20, the Board interpreted the prior quark reference in a way that's not supported by substantial evidence, and that even if the Board's interpretation were credited, is inconsistent with the legal requirement, applies the anticipation requirement incorrectly. So starting with the claim construction issue, first, the Board's conclusion that the claims, Claims 10 and 19, would not have been obvious relies on the erroneous construction that reads a selective boost requirement into the claims. And I want to note... I have a question for you, before you get into the merits. Yes. One of the concerns I have here is this Court previously considered an appeal in a related case where the same claim constructions issues were raised as an alternative grounds for affirmance. But in addition, on the main appeal, those claim constructions would have been relied on to affirm. And we issued a Rule 36 in that case. Am I bound by that determination in that case? So, we thought through that at the time. And the reason that we argued the alternative grounds for affirmance was to preserve this claim construction issue. I think that you're not bound by that claim construction. And the decision in that case does not impact your ability to reach the claim construction issues now. You would agree, though, that the Court's decision in that case rests on the narrower claim construction, right? So, in that case, my recollection of the case is that... It was like a teaching away issue, motivation... It was primarily a motivation, a combined issue. And the dispute was whether there was motivation. The Board found motivation, and this Court affirmed based on that finding. And so, the Court didn't need to reach the question of the claim construction to address that appeal. If, as we suggest, the claim is broader than the narrower construction that the Court... I'm sorry, that the Board used, that would still stand. Because we suggest that the claim certainly covers an embodiment that has a selective boost. Your argument... I hear what you're saying. The only problem is that in that prior case, the Board had found the claims were not invalid in view of the prior art. And then we affirmed that. I don't believe that's correct. That's incorrect. The Board found that the claims were invalid over the prior art reference. And in that case... And that's the appeal involved, the claims that were found invalid. That was, for example, Claim 11. And in that case, it was a combination that included an additional reference called Myers. And that provided the selective boost that the Board said was required by the claims. Here, we're talking about Claim 10, independent claim from which Claim 11 depends. And what Claim 11 adds to Claim 10 is actually the selective boost limitation that does not appear in Claim 10. And so, the issue is slightly different. And, again, just getting back to Your Honor's question, if Claim 11 is invalid under the narrower construction, it's certainly invalid under a construction that admits of both selective boost and boost only. So that, I think, addresses the issue. I'd come back to the standard, though. And this is just a bit of a reminder because it's been a while since we've had a... At least I've had a case under BRI. But this is a case under BRI. And I think that's important because the standard, the construction standard, is the broadest. And this is under CUSO Speed. And the CFR is 37 CFR 42.100B. The Board was required to give each claim the, quote, broadest reasonable construction in light of the specification in which it appears. And Your Honors will recall that there was a public policy reason behind that, which was the ability to amend the claims, which exists in IPRs. Here, the question before the Board was, therefore, whether the construction proposed by Intel was reasonable in light of the specification. Intel's construction covers both embodiments that are disclosed in the specification, both the boost only embodiment and the selective boost embodiment. Would Intel's construction, though, render some other portions of the claim meaningless, like the means for generating a second supply voltage? It would not, Your Honor. It would not. And that issue, that language, I should say, actually is specifically informative of Broadcom's construction. So if you look to the means for generating limitation, it's a means for generating a second supply voltage based on the envelope signal and the boosted supply voltage. That is completely consistent with a boost only embodiment, because what it's saying is you're generating the second supply voltage based on the envelope signal and the boosted supply voltage. That is how the patent in the specification starting at column one and the disclosure in the summary of the invention actually describes the boost only embodiment. And here I'm reading from column one, line 37. The envelope amplifier may receive an envelope signal and the boosted supply voltage and may generate a second supply voltage based on the envelope signal and the boosted supply voltage, boosted only. Where the Board goes awry, and this was Qualcomm's argument, was it then focuses on the PMOS term, this transistor, this PMOS transistor term, and says, well, the source of that transistor is recited as receiving the boosted supply voltage or the first supply voltage, or the first supply voltage. And what the Board did was say, based on the word or, we are going to require in this claim selecting between the two. Isn't the figure in the patent anyway, doesn't it show three PMOSes? I mean, I looked at it and one of them has a PMOS that receives the source voltage, one of them has a PMOS that receives the boosted voltage, and one of them has a PMOS that receives either the boosted voltage or the source voltage. There's three of them. That is true, Your Honor. That's what, figure three? It's figure three and it's also figure five. But the key here is, and this is, I think, why the BRI standard matters, is what the specification describes is it describes a boost-only embodiment. And I've pointed to column one, but column eight is explained. Are there other claims in this patent that are boost-only? No, Your Honor. Well, no, Your Honor. And that is, I think, an important issue. Do they all have this one language? I mean, we'll hear from your friend on that because presumably he knows the patent pretty well. Let me just ask you hypothetically. If there were other claims that were boost-only and didn't have this language that the board has determined requires the selection, would that matter to your argument? I don't know that it would matter to my argument, Your Honor, but fortunately here there are not such claims. All of the claims that we're talking about that actually recite boost at all, my colleague says require selective boost, and that is the construction that was adopted below. And so we're in this curious position where the only claims that actually talk about boosting do not cover the boost-only embodiment according to the board's construction. And we think that that is unreasonable because getting back to the standard, the question is, first, what is the broadest construction in light of the specification? Well, the broadest construction would cover both embodiments. And then the question is, is covering both embodiments reasonable? And to Judge Stark's question, clearly it is because the specification teaches both, and under this court's decision in Katz and in Immunex, there is a strong presumption against excluding a disclosed embodiment. What about the fact that there is no embodiment where the input, what is it, instead of the boosting voltage, the input voltage, the source voltage would be used, and the claims, as you interpret them, would include something that's in the prior art? That's actually, that is the, well, first, any claim that is invalid is anticipated by the prior art. I'm just saying it would include the admitted prior art in the specification, so do we take that into account? If you say or means or, then, you know, they admit that there's, if there's an envelope circuit that just is doing its function based on the input voltage, that that's in the prior art. So maybe there's something from that discussion in the specification that helps us to understand what they meant by ordered. But what they do disclose, Your Honor, is, and I'm reading here from column 8, they do disclose expressly an embodiment, and this is at line 25, where the entire envelope tracker is operated based on the B boost voltage from the boost converter. So it is clearly a disclosed embodiment. And the question I think Your Honor had was, what about the operating on the first voltage only? There is no first only embodiment disclosed in the patent. There is none. Because it's in the prior art. But it also, but the boost only is also in the prior art. That's the Choi reference that we say about it. I understand, but it's in the prior art according to, as the specification's written. That's what I meant. And so to get to that point, coming back to this source and the or, if all we had was the PMOS term alone, and it said based on the boost or the first, or is disjunctive, it means A or B. So if all we had was the PMOS term alone, then this claim could be met by a PMOS that receives either the boost or the first. The work of the, sorry, Your Honor. I was just going to ask you about, I understand your argument on claim 10. I really do. But let me ask you about one of the arguments you have is that claim 11 really is reciting the selective boost, and therefore you don't want to interpret claim 10 to have selective boost. Correct. Is that because they used the word either? I mean, using your logic, I could say you can have, to my opinions, you can either have a donut or you can have a bagel for breakfast, but you can't have both. I just said either or. I guess that's a selective. I mean, why do you think either means that they get to have both? If I can, Your Honor, first I want to just finish the thought on the generating term and the work that it does in the claim. Because what's on the table is you've got a boost-only embodiment, a first-only embodiment, and then a selective boost embodiment, which would cover either of those, right? The work that is done by the generating limitation is to say, well, the second supply voltage, which is the output voltage from the circuit, is based on the envelope signal and the boosted supply voltage. So it's that language which says the claim doesn't cover the first only, not the language in the PMOS transistor. So that is how that gets squared. On claim 11, the interesting thing about claim 11, and I understand Your Honor's point that I'm sort of placing a lot of weight on the word either, but the reason I am is, again, because of the specification. So if there is a distinction between claim 10 and claim 11, it is this word. It is because it says and either the boosted or the first supply. And if we go back to column 1, in the summary of the invention, those words are used to distinguish between the two embodiments. We have at line 37 the boost only embodiment that I've already read. But then if we go down to about line 42, it proceeds to say in one design, the envelope amplifier may further, so clearly it's permissive, it's not required, and it's an additional embodiment. It may further receive the first supply voltage and may generate the second supply voltage based on either the first supply voltage or the boosted supply voltage. So this is the language of claim 11 appearing in the summary of the invention when they're introducing the idea of selective boost. So that is why we would say claim 11 is the selective boost claim. Claim 10 is not so limited. I want to ask you about your anticipation argument before you sit. Thank you. You argue that the board failed to reach this sort of at once envisioned step. Perhaps that's one of the errors you see in their anticipation analysis. It is. Help me understand that because it seems the board is addressing it at pages 19 to 20 and maybe 23. Do you acknowledge that they at least were aware they needed to take that step but they somehow got it wrong? What's the argument? I think it's an as-applied failure, Your Honor. I agree with you that they cite the Microsoft case, but then what they go on to say is that when they apply the standard for anticipation, they say that it was not established that quark shows the elements of the claim in an embodiment as arranged in the claim. And that is their specific ruling. That is where they're applying the law of anticipation. Are you saying they did not consider what a person still in the art would have thought was disclosed by the combination of embodiments in quark? Specifically, yes. That is the argument because they say it is not disclosed in an embodiment, but that is not the law. And on that I'd cite, to Your Honor, the AT&T case, which says anticipation occurs when a prior reference discloses each element of the claim dimension, not only where a particular embodiment within a reference discloses each element of the claim dimension. So you've run through all of your rebuttals, and we'll restore some of it, but we'll turn to the other side now. Thank you, Your Honor. Can you help me with your last name? Sure. Mayor Goids. Okay. You can proceed. The traditional pronunciation. May it please the Court. I would like to begin where Mr. Dowd left off, which is the Board's findings that claims 15 through 20 are patentable over the quark reference and Intel's failure to show otherwise. Anticipation is a pure question of fact. Likewise, the subsidiary issue of what a reference teaches a person of ordinary skill in the art is also a pure question of fact. The Board's numerous findings here demonstrated that figures 5 and 6 are separate and distinct embodiments, and therefore there was no anticipation under Intel's theory. Is it your position that if they're separate embodiments, they can't be relied upon in any way to anticipate? The way Intel presented its argument here, they cannot. Intel had one theory, which was figure 5 and figure 6 are a single embodiment. Intel never made the argument that anticipation could be had under that once-envisaged standard where figure 5 and figure 6 are separate embodiments that they would somehow disclose to claim subject matter. Intel had never made that argument. We know that. Did the Board say that they waived that? The Board did not say that they waived it. And the Board addressed it. The Board addresses the once-envisaged standard and the Microsoft decision, I believe, on pages 19 and 20 of the final written decision, and it mentions it in page, I want to say, 18 when it's reciting the party's arguments. What the Board did there, the Board's mention reflects the Board's acceptance of Qualcomm's argument, which Qualcomm made throughout the IPR proceedings, that Intel failed to provide any evidence, offer any rationale, or supply any argument that a person of ordinary skill in the art would at once envisage the claimed subject matter if, as the Board correctly found, figures 5 and figure 6 were separate embodiments. And we know that because Intel filed its IPR reply brief. Intel had two arguments in its IPR reply brief. First, at appendix 4258, Intel made clear that it was relying exclusively on a single embodiment theory because Intel there argued that Qualcomm is, quote, wrong that figure 5 and figure 6 are separate embodiments. Likewise, its expert declaration inherited the language from its reply at 2068. The only other argument Intel made with respect to anticipation was that figure 5 alone would anticipate the challenge claims. And that's at appendix 4255 and a similar declaration, Intel's reply declaration at 2065. And the Board correctly rejected that argument as untimely and waived. So if we look at the Board's decision in context of the proceedings below and in the full context of the final written decision, it's clear that the Board's reference to at once envisage and the Microsoft decision is accepting Qualcomm's argument that Intel did not provide any evidence. Importantly, Your Honors, we know Intel didn't make this argument because cases such as AT&T, Blue Calypso, and KennaMetal, on which Intel now relies to assign legal error to the Board, were nowhere mentioned by Intel down below. Can I ask you a question? Of course. In this circumstance where a party is citing figures 5 and 6, they're arguing they're the same embodiment, there's a response that they're not the same embodiment, and they're saying figure 5 says all of it, they're relying on elements from figure 5 and 6, how much of a burden is it to show the once envisioned embodiment? How much evidence, what evidence are you looking for beyond the prior reference itself? I'd like to answer that in two parts. First, Your Honor, there is no evidence here. So as a matter of record, there's no evidence that they would be combined. What would the evidence look like? That's what I'm asking. I'm trying to figure out is it just some expert saying, well, I'm a person of ordinary skill in the art, and I would look at these two figures, and I would think there's not that much difference between them. One has voltage, one has current. One seems to be a little bit more detailed than the other, but there are differences, so there must be different embodiments. But how much do I have to opine on? So let me approach it this way. It's a different state. Relying on a single embodiment versus separate embodiments, I think this court case law makes clear that it's a different test for different standard, different evidence, and different elements of proof. Tell me specifically. There would have to be some evidence in the record that a person of skill in the art would immediately understand the claimed invention based on two separate embodiments. There's no evidence like that. The only evidence we have here is that figure 5 and figure 6, the only evidence Intel presented. What form would the evidence be? It would be expert testimony. It would be analysis of why a person of skill in the art would immediately be directed to envision the claimed subject matter based on two separate embodiments. If we put aside whether the argument was made and whether evidence was presented, is it your contention that the board actually applied the test, the once-envisioned combination, correctly, or did they make a mistake and only say whether they would have once envisioned that there was a single embodiment that anticipated it? On this record, the board applied it correctly because there was no evidence to support that argument. Okay, but if there was evidence, then do you concede that they erred in how they applied the test? Not at all, Your Honor, because the findings by the board demonstrate that a person of skill in the art would not at once envisage the claimed subject matter based on two different embodiments. The board found that figure 6 operates in a current domain, whereas figure 5 operates in a voltage domain. Does the board ever address whether a person of skill in the art would at once envisage a combination of embodiments disclosed in plot that would together teach all the elements of your claims? I think the board, on page 19 or 20, makes clear that Intel failed to provide sufficient evidence and arguments to address the differences between figures 5 and 6. And therefore, the board did not go on to that lesson. Correct. So with respect to the anticipation arguments, Your Honor, under the deferential standard, the board's findings are fully supported on the record, especially in view of the arguments that Intel itself presented and the only theories that Intel advanced. I would now like to turn to the claim construction argument. Here, the board correctly construed the language at issue in claims 10 and 19 to mean that two alternative voltages are available at the source to be used to generate a second supply voltage. That is the first supply voltage or the boosted voltage. The board's construction fully aligns with the intrinsic evidence and the claim language. If we use claim 10 as an example, claim 10 is written in means plus function format. The language at issue here is part of the second means plus function limitation in claim 10. As the board noted, there is no dispute that the corresponding structure for the second limitation in claim 10, this is at appendix 40-41, is the structure 170A, which appears in Figures 3 and Figure 5. And the 558 patent uniformly and consistently describes structure 170A in Figures 3 and Figures 5 and in the text as providing a V battery voltage, which is the claimed first supply voltage,  Second, the board correctly rejected Intel's construction because it is not reasonable. This court makes clear that if a construction renders claim language a nullity, that construction is disfavored and wrong. But Intel's construction does precisely that. Under Intel's approach, only a first supply voltage need be available. In that case, the claim language in the second means plus function limitation, which recites generating a second supply voltage based on a boosted voltage, would be a nullity because no boosted supply voltage would be available. Just for a minute, just testing that theory, what if somebody wanted to write a claim that was broad enough they could cover both embodiments? They could, right? It doesn't necessarily mean the language is a nullity, it means it's broad. Under Intel's construction, it would render a nullity and Claim 11 does cover both embodiments. Claim 11 recites, Claim 11 modifies the recited function in Claim 10 and says that the boosted voltage can be generated by, I'm sorry, the second supply voltage can be generated by a boosted voltage or a first supply voltage. So that modifies the functional limitation in the second means plus function clause in Claim 10. That's separate and apart from the structure that is necessary to carry out the invention. What about Claim 19? Claim 19 kind of stands on its own. It's the first time that the first supply voltage and the boosted supply voltage are discussed, and it simply says you've got a boost converter operative to receive the first supply voltage and provide a higher voltage, and then the envelope amplifier operates based on the first supply voltage or the boosted supply voltage. That could just be somebody saying, I want to have a claim that's broad enough to cover either scenario, either circuit. I mean, sometimes patent owners do write broad claims, right? They do, but I don't think that in any way undermines the court's construction here. I see, but I'm trying to understand your argument that it somehow makes some language superfluous just because the envelope amplifier doesn't operate on the boosted supply voltage. And with respect to Claim 19, right, Your Honor, I think that, as we explained in our brief, if only the first supply voltage were available under Intel's construction, there would be no need to have a boosted voltage in Claim 19. But what if they wanted to have a claim that was broad enough that it would cover either scenario? And I think the claim language does that in view of the board's construction. Do you think our Rule 36 in the earlier case has any impact on our decision today? It's suggestive, but I agree with Mr. Dowd that it was a case where the board, this court affirmed under a broader construction. I don't think it does. So you don't think that that case finds our determination in the claim construction today? I think it's suggestive, but it was a Rule 36, so I do not. Unless there's any further questions, I would ask that the court affirm the board's findings of patentability with respect to Challenge 19. Thank you. If I may, Your Honor, so I'd just briefly address the clock issue, unless there are questions about any other issues. No, I'd like to hear about that. Okay. Because it does sound to me like, I mean, I understand your argument from the court. I understand your friend's argument that this, that you concentrated on arguing that 5 and 6 are the same embodiment, so that's why the board then addressed this other way of looking at anticipation. Did you make that argument? We did, Your Honor. And so, and I would, I will, but I would start by suggesting that the, and I think actually this may be as Judge Soule was saying, the very point that we were making is you would read these two things together. That was the thrust of our point in our brief. We cited them together and we cited how they were read together, and by making that argument we were saying a person of skill would read them together. So to your- But that's different than saying they're just one in a more detailed version of the same embodiment. I don't think that it is, Your Honor, because whether- Why not? I mean, that doesn't, honestly, that doesn't make a lot of sense to me. If there are two embodiments and you say, well, a person of skill could read them together to anticipate this happening, that's still two embodiments, but it seems like your argument was focused on these aren't two embodiments at all. It's the same embodiment. The second one just provides more detail. So to be clear, Your Honor, our primary argument, and this is driven by the text of Kwok, is that Figure 5 discloses how to implement Figure 6, and Kwok says this expressly, which is why we say the board's finding lacks substantial evidence. It says, in discussing Figure 5, although the feedforward signal can be injected after the integrator, it's added before the integrator in Figure 5, and here's the key, considering the implementation of the summing circuit, that's the circuit we care about, summing current, summing voltage, and the integrator will be explained in the next section. The next section is Figure 6, and then in Figure 6, it actually addresses the summation, and it says, and I think one of Your Honors pointed this out, you can implement that summation in the voltage domain or the current domain. Either one of those implementations is within what we are describing. So that is why there is a lack of substantial evidence, and if we go to A19 to 20, which is where the board's analysis is, the only evidence they cite is their own reading of this page of Kwok. They don't cite any expert testimony in support of that at all, but there was expert testimony. What evidence did you present? But there was expert testimony, and here I would go to, I think it's A1289 through 1290. This is Dr. Apsell from Cornell who is analyzing these figures, and what she says is, and this gets Judge Hughes to your point, what she's saying is, you know, whether they're one embodiment or two, you would read them together. She specifically says, Figure 6 of Kwok, which is a detailed implementation of the type of circuit shown in Figure 5, shows these same features, and then she highlights the correspondence between them. And then over on 90, she walks through how a person of skill would read these two figures together. Kwok's Figure 6 includes the summing circuit, which identifies the combination of the summing circuit in Figure 5, which she identifies using the epsilon, and the integrator in Figure 5. And then as shown in Figure 6, you can bring them together. Okay, but to me this sounds like a different argument than I thought you were making, which is, it still sounds to me you're arguing now the point that the board's decision that these are two embodiments is not successful, but what I was interested in hearing is the alternative theory of legal error, that the board has not applied the other prominent anticipation that a skilled artisan could look at two separate embodiments and still arrive at the path. And that's the argument where I don't see where you've made it. And this stuff you're pointing to doesn't sound like that argument. So maybe I'm misapprehending the question, because I was attempting to direct you to where the evidence that supports that you could read these two together was. Let me take you to the hearing. Well, actually, it's, I think it does both duty. But if there's any doubt about this... Sorry, I missed the question. Figure six o'clock, which is a detailed implementation of the type of circuit shown in figure five. Were you really trying to emphasize that type of language? I'm not trying to place overemphasis on the word type of. I think she's just... I thought maybe you were trying to say that that was showing that maybe even if there were different embodiments, they relate. Is there anything in your briefing that said that? It happened directly at the hearing, Your Honor. And this was an argument that they were... Did you cite that to me? Yes. A4486 and the discussion between Mr. Goldenberg and Judge Jefferson that appears starting on that page through 488. And the reason I'm citing you there is, and this is starting at line 10, Mr. Goldenberg, who's arguing below, says the argument is that Kwok anticipates. Kwok is a reference that includes both figures five and figure six, and those figures inform each other. So he's saying a person of skill would read those figures together. And then he goes on to reference the Biscotti case, which is Microsoft versus Biscotti. That's the standard. And then Judge Jefferson asks a question. Does it matter if five and six are directed at different embodiments of the invention? So we're specifically addressing this different embodiments idea. And Mr. Goldenberg argues we would agree with that. We would agree that. And the law that the patent owner cites, the Biscotti case, those embodiments were incompatible embodiments. There is nothing incompatible about figures five and six. They're directed to the same thing. So he's specifically arguing that even if these are separate embodiments, they are still compatible. You would still bring them together. And then if we go over to 4487, I mean our point about figure six is that it sheds light on how one of ordinary skill would understand figure five. Okay, Mr. Dodd, I think we have your argument. Thank you, Your Honor. Appreciate it.